UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELLY A. RANDO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. |
| v. ) | 13-11130-FDS |
| ) | |
| CVS PHARMACY, INC., and ) | |
| MICHELLE LEONARD, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

SAYLOR, J.

This is a dispute arising out of an investigation and prosecution of a pharmacy technician for larceny of drugs. Jurisdiction is based on diversity of citizenship.

Plaintiff Shelly Rando worked as a pharmacy technician for defendant CVS Pharmacy, Inc., in Concord, Massachusetts.[1] Defendant Michelle Leonard was the loss-prevention officer at that store. Rando was fired and prosecuted for stealing a bottle of butalbital from the pharmacy at her workplace. She has filed suit against CVS and Leonard, alleging malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process. She also alleges that Leonard tortiously interfered with her employment contract.

On September 10, 2013, Rando filed an amended complaint. Defendants moved to

---

[1] Defendant CVS, Pharmacy, Inc., was incorrectly named in the complaint as "CVS Caremark."

dismiss the amended complaint on September 23, 2013.  For the following reasons, the motion to dismiss will be granted in part and denied in part.

I. **Background**

The facts summarized below are set forth in the amended complaint.

Plaintiff Shelly Rando worked for defendant CVS Pharmacy, Inc., at its Concord, Massachusetts store as a licensed pharmacy technician until April 23, 2012.  She worked at the store for more than 15 years.  During that time, she suffered disabling headaches that she relieved by taking the drug butalbital.  Rando usually obtained the drug through a prescription.  At one point, however, Rando stole a bottle of butalbital from the pharmacy.  CVS captured her removing the bottle on videotape.

Around that time, the Concord store had suffered numerous losses of the drug hydrocodone from its pharmacy.  Defendant Michelle Leonard was the loss-prevention officer in charge of the investigation into the hydrocodone losses.  According to the complaint, she had not be able to ascertain the source of the losses and was under serious pressure to solve the problem.

At around 1:00 p.m. on April 23, 2012, Rando was called into the office at her workplace.  She was interviewed by Leonard and another loss-prevention officer.  According to the complaint, Leonard told Rando that she knew Rando was responsible for thefts of hydrocodone for the past two years.  Rando denied any involvement in the theft of hydrocodone but admitted she had taken one bottle of butalbital.  Leonard then allegedly coerced Rando into confessing to stealing 138 bottles of butalbital.  The complaint alleges that her tactics were "outrageous, defamatory and beyond the scope of human decency and not within the scope of her employment or in furtherance of CVS' legitimate interests." (Am. Compl. ¶ 15).

Rando was then interviewed by two officers of the Concord Police Department. She told them she had only taken one bottle of butalbital. The officers gained her consent to search her home, and found the bottle of butalbital she admitted taking. No other evidence connecting Rando with any other crime was found.

On April 23, 2012, CVS terminated Rando from her position as a pharmacy technician. On that same day, she was charged in Massachusetts state court with one count of larceny over $250 in violation of Mass. Gen. Laws ch. 266 § 30B. She was not charged with any other crime. According to the complaint, the prosecutor told Rando he was waiting for CVS to provide him with evidence that she had stolen 138 bottles of hydrocodone or butalbital, and that the failure to obtain such evidence would result in the termination of the prosecution.

On December 3, 2012, Rando was placed on pre-trial probation.[2] She contends that this was not a result of compromise, that she never wavered in her claim of innocence, and that she never would have been charged with the one count of theft absent Leonard and CVS's tortious activity.

## II. Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the

---

[2] Rando's pharmacy-technician license was suspended and could ultimately be revoked.

allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III. Analysis

The complaint alleges claims of malicious prosecution, abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress against both defendants. It also alleges a claim of tortious interference with contract against Leonard.

### A. Malicious Prosecution

The complaint alleges that defendants committed the tort of malicious prosecution. To establish a claim of common-law malicious prosecution, a plaintiff must show: "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendants; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) (citing *Correllas v. Viveiros*, 410 Mass. 314, 318 (1991)). Defendants contend that the complaint has not properly stated a claim of malicious prosecution because it fails to allege that the prosecution lacked probable cause.

Assuming the facts alleged in the complaint are true, there was probable cause to prosecute Rando for larceny. In the context of a civil action for malicious prosecution, probable cause "has long been defined as 'such a state of facts in the mind of the defendant as would lead

4

a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion,' that the plaintiff had committed a crime." *Carroll v. Gillespie*, 14 Mass. App. Ct. 12, 19 (1982) (quoting *Lincoln v. Shea*, 361 Mass. 1, 4-5 (1972)) (internal footnote and alterations omitted). The complaint states that Rando admitted she took a bottle of butalbital from the pharmacy and that CVS had a video of her taking the bottle. Those facts provide ample probable cause for defendants to institute criminal proceedings against Rando for larceny.

Rando contends that there was no probable cause to prosecute her for the theft of 138 bottles of butalbital or any hydrocodone, and that the larceny prosecution would not have been brought if defendants were not trying to blame her for those thefts. However, in the context of a malicious prosecution claim, "[t]he essential element to be proved is that the defendant lacked probable cause to believe that the plaintiff had committed *the crime charged*." *Carroll v. Gillespie*, 14 Mass. App. Ct. at 18 (emphasis added). Rando was only charged with one count of larceny for stealing one bottle of butalbital; she was not charged with any additional thefts. She cannot maintain an action of malicious prosecution arising out of those additional claimed thefts when no prosecution occurred. Accordingly, her malicious prosecution claim will be dismissed.[3]

## B. <u>Intentional and Negligent Infliction of Emotional Distress</u>

The complaint also alleges claims for intentional and negligent infliction of emotional distress. Defendants contend that the emotional distress claims are barred by the Workers' Compensation Act ("WCA"), Mass. Gen. Laws ch. 152. The WCA provides the exclusive means by which an employee can recover for personal injuries sustained in the course of and arising out of his or her employment, including claims for intentional and negligent infliction of

---

[3] Defendants also contend the complaint failed to allege a termination of the criminal proceedings in Rando's favor. The Court does not reach this issue.

emotional distress. Mass. Gen. Laws ch. 152 § 24; *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558 (1996).[4] Common-law actions are barred by the exclusivity provision of the WCA where (1) the plaintiff is shown to be an employee, (2) her condition is shown to be a personal injury within the meaning of the compensation act, and (3) the injury is shown to have arisen out of, and in the course of, her employment. Mass. Gen. Laws ch. 152 § 26; *Saab v. Massachusetts CVS Pharmacy, LLC*, 452 Mass. 564, 569-70 (2008). Claims against a fellow worker for the commission of an intentional or negligent tort are barred by the exclusivity clause of the WCA if committed within the course of the fellow worker's employment and in furtherance of the employer's interest. *O'Connell v. Chasdi*, 400 Mass. 686, 690-91 (1987).

Rando does not dispute that she was an employee of CVS and that her emotional distress is a personal injury within the meaning of the WCA. She contends, however, that her injury did not arise out of, and in the course of, her employment. She also contends that Leonard was not acting within the scope of her employment when she accused and prosecuted "innocent co-workers for thefts based upon false evidence and the pressures of her internal agenda." (Pl. Opp. at 14).

In *Fusaro v. Blakely*, 40 Mass. App. Ct. 120 (1996), the Massachusetts Court of Appeals confronted a similar situation. The plaintiff in that case was a pharmacy technician at the University of Massachusetts Medical Center. *Fusaro*, 40 Mass. App. Ct. at 122. His employer began investigating him for drug dealing, and the defendants in that case interviewed him, searched him, and threatened to obtain a warrant from the district attorney to arrest him. *Id.* at 12-23. He was not charged with any crimes. *Id.* at 123. The *Fusaro* court found that the

---

[4] The WCA also allows employees to reserve their right to sue if they give notice to their employers. Mass. Gen. Laws ch. 152 § 24. Rando does not contend she has done so here.

plaintiff's emotional distress claims were barred by the WCA, finding that "the defendants were acting in the course of their employment and in furtherance of the [employer's] interests when they undertook an investigation of possible drug dealing . . . and interviewed the plaintiff in connection with that investigation." *Id.* at 123-24.

The present case is analogous to *Fusaro*. The complaint alleges that Rando was suspected of a crime and interviewed by Leonard in her role as a loss-prevention officer working for CVS. Leonard allegedly used outrageous and defamatory conduct to coerce Rando into falsely confessing she stole 138 bottles of butalbital. But Rando was not charged for the theft of the 138 bottles of drugs. Even assuming that CVS inflicted emotional distress on Rando, it arose out of her employment and is therefore covered under the WCA.

Rando contends that Leonard's conduct was outside the scope of her employment because Leonard's actions were contrary to her training, and therefore the claims against Leonard are not barred by the WCA.[5] The *Fusaro* court, however, noted that "[h]owever distorted the defendants' understanding of the proper performance of their duties may have been, we cannot say that they were acting outside the scope of their employment." *Fusaro*, 40 Mass. App. Ct. at 124. The complaint alleges that Leonard inflicted emotional distress on Rando while acting as a loss-prevention officer for CVS and while she was attempting to discover who had stolen drugs from the CVS pharmacy. As an investigation into possible employee theft is clearly in furtherance of an employer's interest, Rando's emotional-distress claims are barred by the WCA. *See Tenedios v. WM. Filene's Sons Co., Inc.*, 20 Mass. App. Ct. 252, 255-56 (1985) (affirming dismissal of emotional distress claims where plaintiff was accused of theft from his

---

[5] The amended complaint alleges no facts as to this contention.

employer by co-worker defendants).

### C. Abuse of Process

The complaint alleges a count for abuse of process. To establish a claim of abuse of process, a plaintiff must show (1) that "process" was used against her (2) for an "ulterior or illegitimate purpose" and (3) that some harm occurred as a result. *Psy-Ed Corp. v. Klein,* 459 Mass. 697, 713 (2011).[6] "To sustain the claim, 'the fact finder must find that process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'" *Id.* (quoting *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010)). "An ulterior purpose is not simply the intent to harm the other party directly by bringing suit, but rather the intent to gain some other end indirectly." *Id.* at 713 n.35. "More specifically, abuse of process has been described as a form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money." *Vittands*, 49 Mass. App. Ct. at 406.

The complaint alleges that defendants instituted criminal proceedings against Rando "as leverage for the ulterior purpose of pinning the blame for the hydrocodone problem on [p]laintiff." (Pl. Opp. at 17). Even if this were true, it would not show that defendants tried to gain a collateral advantage over Rando through the prosecution. The ability of defendants to pin blame on Rando does not show they used the prosecution to obtain property, payment, or anything else from her. *See Psy-Ed Corp.*, 459 Mass. at 714 n.36 (comparing ulterior purpose to extortion).

---

[6] "More precisely the word 'process' in the context of abuse of process means causing papers to be issued by a court to bring a party or property within its jurisdiction." *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 406 n.9 (2000) (quotation and internal citation omitted).

The complaint also alleges that the prosecution "was always intended to be a stalling tactic and a smokescreen for the prosecution of [p]laintiff on 138 counts of theft of [h]ydrocodone." (Am. Compl. at ¶ 18). However, the complaint does not allege any facts that would support a finding that defendants tried to gain an improper advantage over Rando by instituting the criminal proceeding. Defendants could have easily asked the prosecutor's office to bring charges against Rando on the theft of additional drugs if they later discovered evidence she had committed those crimes, even if she was not already being prosecuted. Accordingly, her claim for abuse of process will be dismissed.[7]

### D.  Tortious Interference

The complaint alleges a claim of tortious interference with contractual relations against defendant Leonard. To state a claim for tortious interference with a contract, a plaintiff must allege (1) an existing contract with a third party, (2) the defendant knowingly induced the third party to break that contract, (3) the defendant's interference, in addition to being intentional, was improper in motive or means, and (4) the plaintiff was harmed by the defendant's actions. *G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991). It is undisputed that the complaint properly alleges an employment contract between Rando and CVS, that Leonard knowingly induced CVS to fire Rando, and that Rando was harmed by her termination.

Leonard contends that the complaint does not allege that she acted with an improper motive or means. In the context of tortious interference with an employment contract by another

---

[7] In a footnote in her opposition, Rando alleges that the prosecutor pressured her into paying more than "$7,000.00 in restitution for the value of the 138 bottles of [h]ydrocodone that she did not steal." (Pl. Opp. at 17 n.4). She further contends that this was part of the attempt by defendants to leverage the criminal prosecution against her to obtain money to which they were not entitled. Because these facts were not alleged in the amended complaint, the Court does not consider them.

employee of the company, "[t]he improper motive or means required is actual malice. . . . Actual malice is any spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Shea v. Emmanuel College*, 425 Mass. 761, 764 (1997) (internal quotations and citations omitted).[8]

Rando contends that the complaint alleges actual malice in paragraphs 13-16 and 20. In those paragraphs, the complaint alleges that Leonard browbeat, threatened, and scared Rando, compelled her to confess to the theft of 138 bottles of butalbital through outrageous tactics and pressure, published the illegitimate confession to the Concord Police Department, and berated Rando in front of the police officers as she accused her of the butalbital and hydrocodone thefts. The complaint further alleges that Leonard did so to cover up her own failure to do discover who was actually stealing the hydrocodone.

The complaint adequately alleges a claim of tortious interference of contract. Assuming the facts alleged in the complaint are true, "Leonard was under great pressure to pin the blame for the [h]ydrocodone loss on someone." (Am. Compl. ¶ 10). To do so, she coerced Rando into signing a false confession. Leonard knew the confession was false, and showed it to law enforcement so they would prosecute Rando. She did this in order to cover up her failure to find out who had actually stolen the hydrocodone. Supervisors who terminate an employee to cover up their own failures do not act with a legitimate corporate interest in mind. *See Shea*, 425 Mass. at 764 (valid tortious interference with contract claim where defendant allegedly discharged plaintiff to cover up his own criminal activity). Accordingly, the motion to dismiss

---

[8] Generally, the "actual malice" rule applies only to "corporate officials." *Blackstone v. Cashman*, 448 Mass. 255, 266-67 (2007). Rando contends that "[i]mproper means and motives suffice for the showing of malice." (Pl. Opp. at 11). However, the SJC has explicitly stated that "actual malice" is a higher standard than improper means or motives. *Blackstone*, 448 Mass. at 263-66. The Court assumes, without deciding, that the "actual malice" standard applies to Leonard.

the tortious interference claim will be denied.

### VI.     Conclusion

For the foregoing reasons, defendants' motion to dismiss the amended complaint is GRANTED as to the claims of malicious prosecution (Count 1), intentional infliction of emotional distress (Count 2), negligent infliction of emotional distress (Count 3), and abuse of process (Count 5).  Defendants' motion to dismiss is DENIED as to the claim of tortious interference with contractual relations (Count 4).

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  December 9, 2013